B. Thomas Pantano, J.
This is an action to declare portioiis of the Building Zone Ordinance of the Village of Port Washington North, which lies in the Town of North Hempstead in Nassau County^ New York, invalid, unconstitutional, discriminatory and confiscatory. The present motion is for summary judgment in the declaratory judgment action. The particular sections claimed to be objectionable are hereinafter set forth in full:
“ Section 2.0. No building shall be erected, altered or used and no lot or premises shall be used, unless the Planning Board shall have approved the proposed use, the general building plan and the site plan as complying with the ‘ performance standards ’ hereinabove set forth.”
“ Section 2.6. No Building Permit shall be issued by the Building Inspector for any construction or installation in the scope of this Article unless there shall have been filed with the Building Inspector, along with the Application for Building Permit, a certified copy of the Planning Board resolution approving the general building plans and site plan. ’ ’
Plaintiffs own land in a building zone of the village known as ‘ ‘ Economic Development A ’ District ’ ’ (hereinafter referred to as ED-A District). It is the contention of plaintiffs that because they were unable to identify a specific and particular use or uses permitted by the ordinances of the village which the *978 building was to house, and also because they were unable to name the ultimate occupiers or tenants of the premises, once completed, they were refused a building permit for this land. As a matter of fact, it appears that plaintiffs were unable to complete the application for a building permit because they could not obtain the approval of the proposed use by the Planning Board. Several applications were made with a view toward obtaining the appropriate building permit, but all of such attempts failed.
The village, in an affidavit by its Mayor, states that only by knowing the * proposed end use which the landowner desires to have in his proposed buildings ” can the village be sure that “ the structure itself, its composition, its design, its parking, its site layout and its access routes will be of such a nature so as to correlate with the proposed use so as to comply with the standards set forth in Economic Development ‘ A ’ District.” The affidavit claims that no proposed end use was specified by the plaintiff herein. In his accompanying affidavit the Village Attorney states, “ Quite candidly the area is zoned so as to prohibit and avoid the pitfalls of speculation building. What the plaintiffs want to do is to put up a building of their own design on speculation and then look for a tenant. ’ ’
A reading of the above-quoted ordinance sections clearly shows that before a building permit may be issued by the building inspector under the ordinances as drawn (indeed before an application can be made for a building permit) one must apply to and obtain from the Planning Board approval of the proposed use and building and site plans to assure that they comply with the “ performance standards ” which are set forth in the ordinance and which relate to vibration levels, noise levels, pollution levels, etc. It seems obvious, therefore, that prior to the Planning Board giving its approval, the applicant would of necessity have to know exactly who the occupiers of his proposed premises were to be; otherwise, it would be impossible to determine whether those parties would meet the “ performance standards ” set forth in the ordinance.
The gravamen, then, of this action is that the village will not entertain plaintiffs’ application for a building permit unless they first obtain from the Planning Board its approval of compliance of the proposed use with the performance standards set forth in the ordinance and that the plaintiffs claim they cannot be required to obtain such approval since they do not have their tenants as yet and do not know what specific uses the building will house.
*979 The idea of ‘ ‘ performance standards ’ ’ impresses the court as being a useful zoning tool, when properly used, as they could assist zoning authorities in promoting the health, safety, morals, or general welfare of the community, which is what the village board of trustees is empowered to do by section 175 of the Village Law. Nevertheless, the use to which the performance standards idea has been placed in the ordinance scheme here goes beyond the promotion of those ideals. The performance standards concept would be a valid exercise of the village board of trustees’ power if such standards were tied to enforcement rather than prevention.
As stated by Justice Gulotta in his concurring opinion in Matter of| Pete-Lor, Inc. v. Haber (39 A D 2d 40, 43, 45): “ The specification of the intended use of a building in a building permit is surplusage. Building permits are concerned with construction, not use. An owner is entitled to use a building for any lawful purpose within the zoning ordinances and his rights can neither be enlarged nor diminished by a declaration of the intended use in a building permit. It is the certificate of occupancy which controls the use and this may be changed any time the occasion demands it.”
It is common to require a statement of the proposed use of a building in an application for a building permit, but the ordinance here, in effect, requires the owner to advise the municipality as to the specific use of a proposed building before the granting of a building permit. This as opposed to the specification of a general use, such as specified by the plaintiffs herein, “industrial building with accessory parking”. These ordinances go further, requiring, as they do, the approval of the specific uses which the proposed structure is to house. This is the only interpretation which can be given to sections 2 and 2.6 of the village ordinances, and they therefore exceed the grant of power in section 175 of the Village Law, thus rendering such ordinances invalid.
The import of the village position is, in effect, that in a proposed multitenanted building, such as plaintiffs plan here, it must be fully rented before application can be initiated for a building permit. The time involved in obtaining tenants for the building for the relatively limited uses permitted could easily result in losing prospects who cannot wait indefinitely for all the tenants to be obtained.
Certainly, once the building has been erected, it is a valid exercise of its grant of power for the village to monitor the performance and uses of premises within its borders. However. *980 restraints prior to construction, other than those pertaining to the actual construction of the building itself, have no real value .and as such are unreasonable. It is the certificate of occupancy and not the building permit to which the performance standards might be addressed.
If it should develop that the building or a portion of it was proposed to be used for a purpose other than a specifically permitted use, then the permission of the board of trustees (§ 1.2[j]) or a use variance would have to be obtained.
In view of the foregoing, and it appearing that there are no issues of fact to determine here, the court grants summary judgment to the plaintiffs to the extent that the court declares sections 2.0 and 2.6 of article VIII of the Building Zone Ordinance of the Village of Port Washington North, to be invalid, insofar as they require prior approval of compliance with the performance standards set forth in the ordinance, and the court directs the defendant building inspector to issue a permit, upon proper application, for the proposed premises and to permit construction on and use of the plaintiffs’ realty, provided plaintiffs comply with all other applicable ordinances and regulations not passed upon here.
Since the other provisions of the Building Zone Ordinance are not attacked in the complaint, the complaint is in all other respects dismissed.